AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>FRANCISCO GONZALEZ<br><br>*Defendant(s)* | Case No.<br><br>4-15-71192 |

FILED
SEP 14 2015
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  **July 2015 through August 2015**  in the county of  **Contra Costa**  in the
**Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841(a) | Possession of a Controlled Substance with Intent to Distribute<br><br>Max penalties for uncharged weight = 20 years imprisonment; $1,000,000 fine; 5 year term SVR; $100 mandatory special assessment |

This criminal complaint is based on these facts:

See Affidavit of Special Agent Russell Johnson (attached)

Approved as to form: _____
AUSA Kimberly Hopkins (by AUSA Kathryn Haun)

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Russell Johnson/ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/14/15

_____
*Judge's signature*

City and state: Oakland, CA

Hon. Kandis A. Westmore, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Russell Johnson, being duly sworn, hereby declare and state:

## I.   INTRODUCTION

1. I am a Special Agent (SA) with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since November 13, 2005. I am presently assigned to the ATF Oxford Field Office in Oxford, Mississippi, and working on assignment in Oakland, California, and surrounding area. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I was trained as an ATF Special Agent at the Federal Law Enforcement Training Center in Glynco, Georgia.

2. As an ATF Special Agent, I have participated in federal investigations involving the distribution of controlled substances as well as federal firearms violations. During these investigations, I have participated in various types of investigative techniques, to include electronic surveillance, undercover agents and informants, and controlled purchases of firearms and narcotics from suspects. I have participated in physical surveillance operations and have participated in the execution of federal arrest and search warrants. In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record searches, as well as reviewing previous case files.

3. This affidavit is made in support of a criminal complaint and arrest warrant for Francisco GONZALEZ, also known as "YA-YO", for violations of 21 U.S.C. § 841(a), possession with intent to distribute and distribution of methamphetamine.

4.      Because this affidavit is being submitted for the limited purpose of establishing probable cause for the arrest of GONZALEZ, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to support the lawful arrest of GONZALEZ. The statements contained in this affidavit are based on information provided to me by law enforcement officers as well as my training, experience, and knowledge of this investigation.

**II.     PROBABLE CAUSE**

**A.      July 21, 2015 Methamphetamine Purchase from GONZALEZ**

5.      On July 21, 2015, a confidential informant (CI) working for the ATF met Heather VARNER, who informed the CI that she had an associate who could sell the CI two (2) ounces of methamphetamine. Based on this information, the CI informed VARNER that he/she would like to purchase two (2) ounces of methamphetamine. Later on this same date, an Undercover Special Agent (UC-1) accompanied the CI to meet with VARNER and her associate. VARNER introduced UC-1 and the CI to Francisco GONZALEZ, also known as "YA-YO". GONZALEZ informed UC-1 and the CI that he could get them a "better price" if they purchased methamphetamine more frequently and/or in larger quantities. GONZALEZ stated he could obtain pound quantities of methamphetamine.

6.      An ATF Special Agent conducted a preliminary field test of the suspected methamphetamine which yielded a positive result for the presence of methamphetamine. The methamphetamine weighed approximately fifty-seven (57) grams.

2

### B.     July 24, 2015 Methamphetamine Purchase from GONZALEZ

7.     On July 24, 2015, UC-1 and the CI met with GONZALEZ for the purpose of purchasing one-quarter pound of methamphetamine. GONZALEZ questioned UC-1 and the CI about them wanting to move up in weight. GONZALEZ asked "you guys wanna move up to a half P, a P, P, I got you man?" UC-1 acknowledged they were interested in purchasing more weight and they also wanted to obtain firearms. GONZALEZ answered "yup, I got a AR-15 wit a fuckin hundred round bit, drum...I just came up on" and also stated he had a .44 caliber revolver for sale. GONZALEZ informed UC-1 that he had a Glock in his vehicle (which was parked next to UC-1's vehicle); however that he was not going to sell it.

8.     GONZALEZ then sold UC-1 one-quarter pound of methamphetamine for $1,800. GONZALEZ asked UC-1 "how bout the white?" (referring to powder cocaine). GONZALEZ then retrieved two (2) plastic bags containing a white powdery substance from his pocket, which GONZALEZ stated was cocaine. UC-1 negotiated the purchase of one of the plastic bags of suspected powder cocaine for $600. GONZALEZ then informed UC-1 and the CI that he represented and trafficked narcotics on behalf of the Sinaloa Mexican drug cartel.

9.     An ATF Special Agent conducted a preliminary field test of the suspected methamphetamine which yielded a positive result for the presence of methamphetamine. The methamphetamine weighed approximately one-hundred and eighteen (118) grams and the cocaine weighed approximately fifteen (15) grams.

### C.     July 28, 2015 Methamphetamine Purchase from GONZALEZ

10. On July 28, 2015, UC-1 and the CI met with GONZALEZ for the purpose of purchasing one-quarter pound of methamphetamine. UC-1 and the CI met with GONZALEZ inside of a restaurant and while they were talking, GONZALEZ handed UC-1 one-quarter pound of methamphetamine underneath the table. UC-1 informed GONZALEZ the money to pay for the methamphetamine was in UC-1's vehicle. UC-1, the CI and GONZALEZ exited the restaurant and entered UC'1's vehicle and UC-1 paid GONZALEZ $1,800 for the one-quarter pound of methamphetamine GONZALEZ had handed UC-1 inside the restaurant.

11. GONZALEZ informed UC-1 and the CI that the price of a half-pound of methamphetamine would cost UC-1 $2,500 and a whole pound would cost $5,000. GONZALEZ asked UC-1 and the CI if they could acquire heroin and stated he was interested in purchasing kilograms of heroin.

12. An ATF Special Agent conducted a preliminary field test of the suspected methamphetamine which yielded a positive result for the presence of methamphetamine. The methamphetamine weighed approximately one-hundred and fourteen (114) grams.

D. **August 4, 2015 Firearm and Methamphetamine Purchase from GONZALEZ**

13. On August 4, 2015, UC-1 and the CI met GONZALEZ at the residence of one of GONZALEZ's associates for the purpose of purchasing a firearm and one-half pound of methamphetamine from GONZALEZ. UC-1 and the CI met with GONZALEZ in the front yard of the residence. GONZALEZ removed a firearm from a red bag he was carrying and presented it to UC-1. The firearm is described as a Ruger, model GP100, .357 caliber revolver, s/n 175-74481. GONZALEZ informed UC-1 the firearm was brand new and that it had not been used. GONZALEZ then retrieved one-half pound of methamphetamine and handed it to UC-1.

14. In return for the firearm and the methamphetamine, UC-1 provided GONZALEZ with $3,300. UC-1 then informed GONZALEZ that he and his associates were interested in purchasing larger quantities. UC-1 asked GONZALEZ if he could handle multi-pound quantities, to which GONZALEZ answered in the affirmative.

15. An ATF Special Agent conducted a preliminary field test of the suspected methamphetamine which yielded a positive result for the presence of methamphetamine. The methamphetamine weighed approximately two-hundred and thirty (230) grams.

### E. August 11, 2015 Methamphetamine Purchase from GONZALEZ

16. On August 11, 2015, UC-1 and the CI met with GONZALEZ for the purpose of purchasing one pound of methamphetamine. Once UC-1 and the CI arrived at the location chosen by GONZALEZ, GONZALEZ walked up to UC-1's vehicle, holding the front of his pants. Once GONZALEZ entered UC-1's vehicle, he removed a clear zip lock bag from the front of his pants and handed it to UC-1 and stated "this is the P right here." In return for the methamphetamine, UC-1 provided GONZALEZ with $5,000.

17. GONZALEZ then asked UC-1 if he was interested in purchasing rifles, to which UC-1 answered yes. GONZALEZ stated he had a "plug" who was able to supply a large quantity of rifles and shotguns and stated he would send the CI a photo of the firearms later this same date.

18. An ATF Special Agent conducted a preliminary field test of the suspected methamphetamine which yielded a positive result for the presence of methamphetamine. The methamphetamine weighed approximately four-hundred and fifty-four (454) grams.

### F. August 12, 2015 Firearm Purchase from GONZALEZ

19.     On August 12, 2015, UC-1 and the CI met GONZALEZ at a residence for the purpose of purchasing a firearm from GONZALEZ. GONZALEZ entered UC-1's vehicle with a hooded sweatshirt in his hands. GONZALEZ then removed a Ruger, model P89, 9mm handgun, s/n 303-76514 from the sweatshirt and handed it to UC-1. UC-1 paid GONZALEZ $650 in return for the firearm.

### G.     August 15, 2015 Firearm Purchase from GONZALEZ

20.     On August 15, 2015, UC-1 and the CI met with GONZALEZ at an apartment complex for the purpose of purchasing a firearm. GONZALEZ entered UC-1's vehicle and handed UC-1 a Hi-Point, model C9, 9mm pistol, s/n P1579876. In return for the firearm, UC-1 paid GONZALEZ $550.

### H.     August 17, 2015 Firearms Purchase from GONZALEZ

21.     On August 17, 2015, UC-1 and the CI met with GONZALEZ for the purpose of purchasing six (6) firearms. UC-1 and the CI met GONZALEZ at a residence and GONZALEZ retrieved six (6) rifles contained in a camouflage bag from his vehicle. GONZALEZ had the CI assist him in loading the firearms into UC-1's vehicle. GONZALEZ stated the firearms came from a "lick." UC-1 paid GONZALEZ $2,000 for the firearms.

### I.     Criminal History for GONZALEZ

22.     GONZALEZ has the following felony convictions- July 8, 2014- Carry Loaded Firearm in Public Place, sentenced to 5 years probation. July 8, 2014- Possession of a Controlled Substance for Sale, sentenced to 5 years probation.

J.   CI Information

23.   The CI is a paid informant who has worked as an informant since approximately 2001. The CI has misdemeanor and felony arrests; however does not have any felony convictions. I have no reason to doubt the veracity of the CI and they have cooperated successfully in past

### III.   CONCLUSION

24.   Based on my training and experience, and the foregoing facts, I believe that probable cause exists that Francisco GONZALEZ, aka "YA-YO", possessed with intent to distribute and distributed methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

Finally, I request sealing of this affidavit and all supporting materials until such time as GONZALEZ has been apprehended since failure to seal could alert GONZALEZ and/or his associates if this were to be public.

Under penalty of perjury, I swear that the foregoing is true and correct to the best of my knowledge, information, and belief.

_____
Russell Johnson, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SWORN BEFORE ME
ON ___9/14_____, 2015.

_____
HONORABLE KANDIS A. WESTMORE
UNITED STATES MAGISTRATE JUDGE